## LEVINE v. SEARS, ROEBUCK & CO. et al.
### No. 2293.

District Court, W. D. Michigan, S. D.

Dec. 24, 1930.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for plaintiff.

Rice & Rice, of Grand Rapids, Mich., for defendants.

RAYMOND, District Judge.

This is a suit for infringement of United States Patent No. 1,466,656 issued to C. E. Barr et al. September 4, 1923. It relates to electric toasters, and, more precisely, as stated in the specifications, to "means adapted to toast both sides of a plurality of slices of bread simultaneously and at the same time heat articles placed on the top plate of the toaster, and its object is to provide a device of this character which shall have a maximum toasting effect, which can be cheaply constructed and which will not readily get out of order." The alleged infringing device is manufactured by Utility Electric Company, a corporation of limited resources, which defendants Pavelka, as the principal stockholders, finance and control. The device is sold by Sears, Roebuck & Co. The defenses are invalidity because of an-

ticipation and want of invention, and non-infringement. Plaintiff relies on claims 1, 6, and 11. They read:

"1. A toaster comprising a base, a top, a series of parallel heating elements extending substantially the length of the toaster, between the base and the top, and casings for the outer heating elements."

"6. A toaster comprising a base, a top, a series of heating elements extending substantially the full length of the toaster between the base and the top, casings for the outer heating elements, means to support the inner heating element, and guard wires extending longitudinally of the toaster across said heating elements."

"11. A toaster comprising a base, a top, a series of heating elements extending between the base and the top, and casings for the outer heating elements, said base and top being perforated to permit upward flow of heated air."

A considerable number of patents are set up by way of anticipation. The ones principally relied on, and evidently the closest references, are Delehant, No. 1,230,384, issued June 19, 1917, for an electric toaster; and Van Aller, No. 917,195, issued April 6, 1909, for an electric oven. The first is relied upon as completely anticipatory of claims 1 and 6, while the latter is claimed to anticipate claim 11. As to claim 6 it is urged that defendants' structure has *vertical* guard wires and does not therefore infringe this claim which specifies *longitudinal* guard wires.

Claims 1 and 6 disclose a toaster comprising a base, a top, a series of parallel heating elements extending substantially the length of the toaster between the base and the top, and casings for the upper heating elements. Claim 6 differs from claim 1 in that it also specifies means to support the inner heating element and guard wires extending longitudinally of the toaster. These claims read literally on the prior structures of Delehant and Van Aller. The prior art patents cited clearly disclose the simultaneous toasting of several slices of bread, the toasting of both sides of bread simultaneously, the parallel vertical arrangement of heating elements, the protecting wires or grids, and the casings for the upper heating element. It fairly appears from the record, however, that none of these prior art patents were practical structures in the field occupied by plaintiff. None of them, so far

as disclosed by the record, has met with any marked degree of commercial success. Examinations of the several structures and demonstrations of results have convinced the court that the acceptance of plaintiff's device by the trade and the success of the infringing device is due to the additional element of claim 11, namely, "said base and top being perforated to permit upward flow of heated air." Without the use of this element attempts to toast have resulted in bread burned at its upper edge and not affected at all by the heat at the lower edge (as shown by the demonstration of the Delehant structure which has a completely closed base), or approximately the same lack of uniformity of effect on the slice as disclosed upon demonstration of the approximate Van Aller structure which has no base. It seems obvious that commercial success for devices of this character depends upon the production of a substantial degree of uniformity of toasting over the entire surface of the bread. The controlling element in the present state of the art is the inclusion of perforations in the base and top to admit a given quantity of air to be carried upward to properly control the distribution of the heat over both sides of each slice of bread. It is urged by plaintiff that reference may be had to the specifications of the patent in suit to bring into claims 1 and 6 by implication the element of perforations for air circulation. It is the opinion of the court that this element cannot be read into claims 1 and 6 by implication for the purpose of saving these claims from the defense of anticipation, and they must therefore be held invalid.

Claim 11, on the other hand, includes all the essential elements. Plaintiff's commercial device and the toaster manufactured and sold by defendants have openings in the base designed to control the inlet of air. The differences between the two are as to immaterial details which in no way affect mode of operation or results. The infringing structure has a base with fourteen openings of a graduated size for the obvious purpose of controlling inflow of air.

Defendant urges that the only difference between the results produced by the prior art structures and that of plaintiff and the infringing structure is a matter of degree of toasting, the taste for which may vary with different consumers, and that this may in any device be controlled by the length of

time that the bread is subjected to heat. This argument ignores the fact that it is unlikely that the same consumer would relish varying degrees of toasting in the same slice of bread. In other words, toast burned at one edge of the slice and unaffected by heat at the other edge with varying degrees of results between would ordinarily not be desired. Defendant further urges that the Van Aller toaster with no base clearly answers claim 11 wherein it specifies a perforated base. There is obviously a substantial mechanical difference between a toaster with no base and one with a base having perforations and this difference quite clearly accounts for the obvious difference in results. The substantial progress in the art appears clearly to be due to the perforations in the base which are indicated in the drawings by numeral 74, and referred to in the specifications in the following language: "Slots 74 may be formed in the base plate I to admit air which rises between the backs 44 of the end casings and the backing plates 56 and escapes through the slots 75 in the top 33." The element of claim 11 reading "said base and top being perforated to permit upward flow of heated air" denotes this feature of the structure as a part of a novel combination. Progress in the art of toasting by electric toasters in the matter of application of heat with a fair degree of uniformity over the entire surfaces of a plurality of slices of bread was indicated by such a structure. This in the opinion of the court was not a matter of mere mechanical skill.

It is also urged by defendant that there is nothing in the specifications to indicate that the inventor was trying by means of the perforated base to regulate and control the air or that that was his purpose in providing therefor. It is not required that an inventor shall fully understand the principles of operation of his structure. It is required only that the specifications shall describe the structure. The evident fact is that the structure described does give the result of a regulated flow of air which makes possible a uniform toasting of a slice of bread to the extent that the device has successfully produced toast electrically in the oven type of toaster. It is obvious that if the openings in the base are eliminated a commercially successful toast is not produced and that the same result follows the complete omission of the base as in the Van Aller structure. The decree will find claim 11 valid and infringed. The decree will provide for injunction as to all the defendants and direct an accounting.

A decree may be submitted for signature in accordance herewith.